In the Matter of RED HOOK/GOWANUS CHAMBER OF COMMERCE, Respondent-Appellant, v NEW YORK CITY BOARD OF STANDARDS AND APPEALS et al., Appellants-Respondents. [853 NYS2d 644]—

In September 2002 160 Imlay Real Estate, LLC (hereinafter Imlay), applied to the New York City Board of Standards and Appeals (hereinafter BSA) for a use variance with respect to real property it owns in the Red Hook section of Brooklyn, which is currently improved with a six-story vacant warehouse in an M2-1 zoning district, which permits manufacturing, commercial, and retail uses, but prohibits residential use. Over the course of a public hearing held between March and November 2003, Imlay submitted evidence before BSA demonstrating that since 1999, it had aggressively, but unsuccessfully, marketed the warehouse, in whole and in part, for permissible use to dozens of potential buyers or tenants, and that even if any buyer or tenant had wished to proceed, substantial redesign and upgrading to the warehouse's physical plant was required to make it

useful for commercial or industrial tenants. Moreover, Imlay submitted a "dollars and cents" analysis which concluded that a return on equity for as-of-right conforming "manufacturing" use would be 1.56%, while the return on equity for a nonconforming residential use would be 11.41%. In a determination dated December 23, 2003 BSA granted Imlay's application for a use variance. Thirty days later, upon the expiration of the relevant statute of limitations' period (*see* Administrative Code of City of NY § 25-207 [a]), the petitioner, Red Hook/Gowanus Chamber of Commerce (hereinafter the Coalition), commenced the instant CPLR article 78 proceeding to annul the determination. The Coalition named as respondents BSA and the City of New York (hereinafter collectively the respondents), but not Imlay. The respondents thereafter moved to dismiss the petition for failing to join a necessary party, Imlay, and while their motion was pending, the Coalition cross-moved for leave to amend the petition to name Imlay as a respondent. In an order dated July 30, 2004, the Supreme Court denied the respondents' motion and granted the Coalition's cross motion. While the respondents' appeal from that order was pending before this Court, the Coalition filed an amended petition which added Imlay as a respondent and, instead of seeking vacatur of BSA's determination granting the use variance, as it had in the original petition, sought only a judgment remitting the matter to BSA for additional hearings on whether BSA's determination had been made in accordance with New York City Zoning Resolution § 72-21. By decision and order dated May 9, 2005, this Court reversed the order dated July 30, 2004, finding that the Coalition had not adequately explained its failure to name Imlay as a respondent, and accordingly, CPLR 1001 (b) precluded the Coalition from proceeding in Imlay's absence (*see Matter of Red Hook/ Gowanus Chamber of Commerce v New York City Bd. of Stds. & Appeals,* 18 AD3d 558 [2005]). Thereafter, the Court of Appeals reversed this Court, finding that although Imlay was a necessary party pursuant to CPLR 1001 (a), remittal to the Supreme Court was necessary to consider whether, pursuant to CPLR 1001 (b), the proceeding could continue in Imlay's absence (*see Matter of Red Hook/Gowanus Chamber of Commerce v New York City Bd. of Stds. & Appeals,* 5 NY3d 452 [2005]).

Upon remittal, Imlay moved to dismiss the proceeding insofar as asserted against it as time-barred since it had not been joined until after expiration of the 30-day statute of limitations (*see* Administrative Code of City of NY § 25-207 [a]). The respondents then moved for leave to renew their original motion to dismiss the petition for failure to join a necessary party,

vacate the order granting the Coalition's cross motion to add Imlay as a respondent, and to dismiss the proceeding. By order dated April 18, 2006, the Supreme Court granted Imlay's motion, dismissed the proceeding insofar as asserted against Imlay, granted that branch of the respondents' motion which was for leave to renew their prior motion, and upon renewal, considered the five factors enumerated in CPLR 1001 (b) and concluded that the proceeding could continue against the respondents in Imlay's absence (*see Matter of Red Hook/Gowanus Chamber of Commerce v New York City Bd. of Stds. & Appeals,* 11 Misc 3d 1081[A], 2006 NY Slip Op 50648[U]). In the order and judgment appealed from, the Supreme Court granted the amended petition, vacated the variance, in effect, denied the respondents' motion to dismiss the proceeding for failure to join a necessary party, and remitted the matter to BSA for the limited purpose of performing an economic analysis projecting the rate of return for individual use groups permitted in the M2-1 zoning district pursuant to New York City Zoning Resolution 72-21 (b). We reverse.

A court may excuse the failure to join a necessary party and allow an action to proceed in the interest of justice upon consideration of five factors enumerated in CPLR 1001 (b): (1) whether the petitioner has another remedy if the action is dismissed for nonjoinder, (2) the prejudice that may accrue from nonjoinder to the respondent or to the nonjoined party, (3) whether and by whom prejudice might have been avoided or may in the future be avoided, (4) the feasibility of a protective provision, and (5) whether an effective judgment may be rendered in the absence of the nonjoined party.

Here, the respondents concede that the first factor weighs in favor of excusing Imlay's nonjoinder since the Coalition would have no effective remedy by which to challenge the use variance if the proceeding were dismissed for failure to join Imlay (*see Matter of 27th St. Block Assn. v Dormitory Auth. of State of N.Y.,* 302 AD2d 155, 162 [2002]). However, the Supreme Court improvidently exercised its discretion in determining that the remaining four factors also weighed in favor of the proceeding continuing in Imlay's absence. As to the second factor, Imlay will suffer great prejudice if the matter proceeds in its absence and the variance is vacated, as it was in the order and judgment appealed from. While the respondents seek dismissal of the proceeding, and therefore have overlapping interests with Imlay, ultimately it cannot be guaranteed that the respondents will protect Imlay's interests, as Imlay, a real estate developer, is concerned with a potential multi-million dollar loss and the

respondents are concerned with regulatory and administrative issues (*see Matter of Red Hook/Gowanus Chamber of Commerce v New York City Bd. of Stds. & Appeals,* 5 NY3d at 457; *Matter of Fagelson v McGowan,* 301 AD2d 652 [2003]). As to the third factor, the Coalition easily could have avoided the prejudice to Imlay by having timely named Imlay as a respondent, especially since the Coalition had participated in BSA's public hearing that led to the challenged use variance. Moreover, although Imlay could avoid any prejudice by voluntarily intervening in the action, such a fact is outweighed by the Coalition's failure to set forth any reasonable excuse for its failure to timely join Imlay as a respondent (*see Matter of Cybul v Village of Scarsdale,* 17 AD3d 462, 463 [2005]; *Matter of East Bayside Homeowners Assn., Inc. v Chin,* 12 AD3d 370 [2004]). As to the fourth factor, the Supreme Court vacated the variance and therefore granted even greater relief than the Coalition had sought in its amended petition. Thus, this factor also weighs against proceeding in Imlay's absence, as under such circumstances, no protective provision is feasible since vacatur of the variance directly affects Imlay's economic interests. Finally, the fifth factor also weighs against proceeding in Imlay's absence, as it is questionable whether an effective judgment may be rendered without Imlay's participation in the proceeding.

Accordingly, considering each of the five factors enumerated in CPLR 1001 (b), and given our conclusion that Imlay is an indispensable party (*see Matter of Red Hook/Gowanus Chamber of Commerce v New York City Bd. of Stds. & Appeals,* 5 NY3d 452, 459-460 [2005]), the Supreme Court erred by, in effect, denying the respondents' motion to dismiss the proceeding (*see Matter of Cybul v Village of Scarsdale,* 17 AD3d at 463; *Matter of East Bayside Homeowners Assn., Inc. v Chin,* 12 AD3d 370, 371 [2004]; *Matter of Basha Kill Area Assn. v Town Bd. of Town of Mamakating,* 302 AD2d 662, 664 [2003]; *Matter of Fagelson v McGowan,* 301 AD2d 652 [2003]; *Matter of Spence v Cahill,* 300 AD2d 992, 993 [2002]; *Matter of Llana v Town of Pittstown,* 245 AD2d 968, 969 [1997]).

In light of our determination, the parties' remaining contentions have been rendered academic. We note that, contrary to the conclusion reached by our dissenting colleague, the Supreme Court erred in vacating the use variance and remitting the matter to the BSA for a more extensive dollar and cents analysis pursuant to New York City Zoning Resolution § 72-21 (b). A court may overturn a zoning board's determination only if it was irrational, arbitrary, or capricious (*see Matter of Ifrah v Utschig,* 98 NY2d 304, 308 [2002]; *Matter of Sasso v Osgood,* 86

NY2d 374, 384 n 2 [1995]; *Matter of B.Z.V. Enter. Corp. v Srinivasan,* 35 AD3d 732 [2006]). Here, in Imlay's dollars and cents analysis, it concluded that the return on equity for the "manufacturing" use group, an umbrella group consisting of more than 100 permissible uses in an M2-1 zoning district, was 1.56%, while the return on equity for a nonconforming residential use was 11.41%. In finding that BSA's determination was rational based on the factors set forth in New York City Zoning Resolution § 72-21 (a), (c), (d), and (e), but not (b), the Supreme Court improperly imposed upon Imlay the burden of setting forth a dollars and cents analysis examining each permissible use within the "manufacturing" use group, even if such uses would not be practical under the circumstances (*Matter of West Vil. Houses Tenants' Assn. v New York City Bd. of Stds. & Appeals,* 302 AD2d 230, 231 [2003]). Here, there was evidence that certain permissible uses within the manufacturing use group, such as retail and commercial use, were unlikely to provide any reasonable return given the property's physical characteristics (*see* CPLR 7803 [3]; *Matter of Sasso v Osgood,* 86 NY2d at 384 n 2; *Matter of Turkewitz v Planning Bd. of City of New Rochelle,* 24 AD3d 790 [2005]; *Matter of Halperin v City of New Rochelle,* 24 AD3d 768, 770 [2005]; *Matter of West Vil. Houses Tenants' Assn. v New York City Bd. of Stds. & Appeals,* 302 AD2d at 230-231). Miller, Angiolillo and McCarthy, JJ., concur.

Lifson, J.P., dissenting and voting to modify the order and judgment appealed from by deleting the provision thereof remitting the matter to the New York City Board of Standards and Appeals for further analysis pursuant only to New York City Zoning Resolution § 72-21 (b) and substituting therefor a provision remitting the matter to the Board of Standards and Appeals to consider the matter de novo, and, as so modified, to affirm the order and judgment appealed from.

To the extent they are pertinent, the underlying facts are as follows: 160 Imlay Street Real Estate, LLC (hereinafter Imlay), is the owner of a six-story vacant warehouse in the Red Hook section of Brooklyn, located in an M2-1 zoning district, which permits, as of right, various commercial and manufacturing uses, but prohibits residential uses. Imlay sought a use variance from the New York City Board of Standards and Appeals (hereinafter BSA) to convert the warehouse to residential use.

At the initial hearing before BSA, officers of Imlay testified that the building was purchased ostensibly to be used within the existing zoning restrictions, but that after several years these efforts proved fruitless. Testimony was offered, inter alia, that the ceilings were too low, the column bays were too small,

and the turning radius into the loading docks was too difficult for modern trucks. In short, Imlay took the position that continued use of the building as a warehouse was impracticable. Additionally, testimony was offered which, in a perfunctory manner, indicated that no alternative development of the building was possible. Imlay supported this position with a list of 53 potentially interested parties who were shown the property between February 2000 and January 2001, and a list of 21 dates between January 2000 and January 2002 when realtors showed the property to potential large-scale users, separate and apart from smaller tours of full and partial floors, none of which resulted in any consequential economic activity for the property. By a 3-1 vote, the variance for the residential use was granted.

The instant proceeding pursuant to CPLR article 78 was commenced by the Red Hook/Gowanus Chamber of Commerce (hereinafter the Chamber of Commerce) to nullify the variance. However, the Chamber of Commerce neglected to name or serve Imlay. BSA and the City of New York (hereinafter collectively the respondents) moved to dismiss the proceeding for failure to timely join a necessary and indispensable party, to wit, the property owner and successful applicant, Imlay. The Chamber of Commerce cross-moved for leave to serve an amended petition in which Imlay was named as a party. Despite the fact that the statute of limitations had passed, the Supreme Court denied the respondents' motion and granted the Chamber of Commerce's cross motion.

This Court reversed the Supreme Court's order and dismissed the proceeding. The Court of Appeals reversed this Court's order and remitted the matter to the Supreme Court for further proceedings, to determine whether to allow the matter to proceed in the absence of a necessary party in accordance with CPLR 1001 (b).

Upon remittal to the Supreme Court, Imlay moved to dismiss the proceeding insofar as asserted against it because it was joined after the expiration of the statute of limitations period. The respondents renewed their motion to dismiss the proceeding. The Supreme Court, by order dated April 18, 2006, granted Imlay's motion to dismiss the proceeding insofar as asserted against it, granted that branch of the respondents' motion which was for leave to renew its prior motion to dismiss the proceeding for failure to join a necessary party, and upon renewal, permitted the matter to proceed against the respondents in Imlay's absence. The court also granted Imlay leave to intervene if it so chose.

Thereafter, by order and judgment entered June 2, 2006, the

Supreme Court granted the amended petition, vacated the variance, in effect, denied the respondents' motion to dismiss the proceeding for failure to join a necessary party, and remitted the matter to BSA for the submission of additional evidence in the form of economic analysis projecting the rate of return for all permissible use groups. BSA and the City of New York appeal from the entire judgment and the Chamber of Commerce cross-appeals from that portion of the judgment which remitted the matter to BSA for further review pursuant only to New York City Zoning Resolution § 72-21 (b).

Thus, there are two issues to consider. First is Imlay a necessary and indispensable party? Second, if the failure to join Imlay in a timely fashion is not fatal to the proceeding, what are the issues to be considered by BSA upon remitittur?

With respect to the first issue, CPLR 1001 (b) requires consideration of five enumerated factors in determining whether to allow an action to proceed in the absence of a necessary party: (1) whether the plaintiff has another effective remedy in case the action is dismissed on account of the nonjoinder; (2) the prejudice which may accrue from the nonjoinder to the defendant or to the person not joined; (3) whether and by whom prejudice might have been avoided or may in the future be avoided; (4) the feasibility of a protective provision by order of the court or in the judgment; and (5) whether an effective judgment may be rendered in the absence of the person who is not joined.

No one factor is dispositive or must be given greater weight than any other factor (*see* Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C1001:2, at 242). Moreover, the court is granted broad discretion to properly balance the interest of the petitioner against the absentee party and the interests of justice (*see* Supporting Study on Compulsory Joinder of Parties, NY Advisory Comm on Prac and Proc, First Preliminary Rep, 1957 NY Legis Doc No. 6 [b]). An examination of the Supreme Court's painstaking consideration of each factor and the weight given to each in this case clearly negates any inference that the Supreme Court abused or improvidently exercised that discretion.

A factor-by-factor analysis is not necessary. Guidance as to how to apply the statute (consonant with its avowed legislative purpose) can be gleaned from judicial precedent. The Court of Appeals, faced with litigation seeking to invalidate a compact entered into between the St. Regis Mohawk tribe and the State of New York, allowed the litigation to proceed despite the fact that the party potentially most adversely affected by the granting of the petition (the tribe) was not a party to the proceeding,

putting great weight on the fact that while jurisdiction could not be obtained over the tribe, it could voluntarily intervene (*see Saratoga County Chamber of Commerce v Pataki,* 100 NY2d 801 [2003], *cert denied* 540 US 1017 [2003]). The Court noted the strong policy against dismissal of otherwise meritorious actions which is to be invoked only as a last resort. Permeating that decision was the Court's desire to see that a judicial determination affecting a momentous issue of public concern (to wit, the propriety of compacts to authorize Casino gambling on Indian reservations) not be circumvented through the tribe's waiver of its opportunity to participate in the litigation by assertion of its right of sovereign immunity.

Similarly, the Appellate Division, First Department, when faced with a situation strikingly similar to the facts presented herein, came to the conclusion that it was an abuse of discretion for the Supreme Court to dismiss a petition for failure to join the successful applicant and reinstated the petition (*see Matter of 27th St. Block Assn. v Dormitory Auth. of State of N.Y.,* 302 AD2d 155 [2002]). That Court placed great emphasis on the fact that the applicant could have intervened and, in effect, acquiesced to its non-joinder. The critical factor appears to be that the applicant was afforded an opportunity to be heard, notwithstanding the passage of the limitations period against it and that the appropriate remedy employed was to grant the applicant leave to intervene. Again, a careful reading of the decision appears to indicate that the Court was greatly influenced by the potential public interest in having a large part of the immediate area adversely affected without any judicial review of the propriety of the actions which were the subject of the petition in question. This type of analysis is not without precedent in this department (*see e.g. Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484 [1982]).

I readily concede that the facts in each of the cited cases are distinguishable and one can argue that one factor or the other requires a different outcome. However, the issue was and still remains, did the Supreme Court improvidently exercise its discretion? In view of the following, I cannot conclude that there was a misuse of the discretion which the Legislature has reposed in the Supreme Court. First, there is no prejudice to the applicant. Imlay could, and still can, participate in the litigation. Second, once the statute of limitations period expired, jurisdiction could not be obtained over Imlay. Third, the Chamber of Commerce would be without any other remedy at law if the proceeding is prematurely aborted. Fourth, while Imlay's interests may be impaired by the remittal to BSA, such impair-

ment need not be inevitable if the applicant is able once again to persuade BSA of its entitlement to the variance in question. Lastly, as contemplated by the drafters of the statute, there are circumstances where the interests of justice require that the proceeding be allowed to proceed. Great weight should be placed on the reality that the proposal will have a substantial and lasting impact on large areas of the Red Hook community. Changes of such magnitude are more susceptible to prompt implementation and community acquiescence where legitimate judicial oversight has not been aborted by an otherwise avoidable legal technicality. In view of the fact that, in permitting the litigation to proceed, the Supreme Court afforded the applicant an opportunity to participate which it chose not to utilize, I cannot conclude that the Supreme Court misused the discretion granted to it by CPLR 1001 (b).

Turning to the merits of that portion of the Supreme Court's determination which remitted the matter to the BSA, I do not believe that it can be seriously disputed that, had Imlay been joined in the first instance, the record under review is inadequate to support the dramatic relief granted in the form of the variance. Where reasonable people may differ is with respect to the adequacy of the review as to each of the factors set forth in the New York City Zoning Resolution § 72-21 ([a]-[c]). Since the record does not demonstrate whether a reasonable return can be had on the applicants' investment, I agree with the Supreme Court's determination to remit the matter to BSA for further proof as to the factors to be considered pursuant to New York City Zoning Resolution § 72-21 (b). However, such review would be too restrictive. The record under review does not adequately support the determination of BSA with respect to factors required to be considered in New York City Zoning Resolution § 72-21 (c), (d), and (e).

BSA, in my view, may have properly considered whether the property could no longer be utilized within its current zoning category, but certainly it did not give adequate consideration to whether the property could be used, alternatively, for manufacturing, industrial, or commercial purposes, and therefore there cannot be a proper determination as to what would constitute the minimum variance that can be granted commensurate with the hardship suffered. In addition, given the applicants' alleged purchase of a second warehouse in the immediate vicinity, BSA's review of whether the hardship was purposefully self-created is wholly inadequate. Therefore, I would modify the Supreme Court's order and judgment and broaden the remittal to direct BSA to consider the matter de novo.

Accordingly, because I would modify the order and judgment to broaden the scope of review before BSA, and otherwise affirm that portion of the order and judgment under review which determined that Imlay is not a necessary and indispensable party, I must respectfully dissent.